has two requirements of immediate notice,—one on the occurrence of an accident, and the other when a claim is made on account thereof. The latter requirement seems to have been met promptly.

These views render unnecessary a consideration of the other questions raised by the appeal, and require the reversal of the judgment.

Judgment reversed, and new trial granted, costs to abide the event. All concur.

---

QUEENS COUNTY v. CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, Third Department. March 7, 1900.)

1. MUNICIPAL CORPORATIONS—CONSOLIDATION—DEBTS—APPORTIONMENT.

Greater New York Charter (Laws 1897, c. 378) § 1588, provided that, since a part of Queens county was consolidated with the city of New York, the debt of said county should be apportioned between the city and county. Section 7 forbade any municipal corporation, part of the territory of which is so annexed, to levy any tax on property within the city. Section 1611 declared that the charter should take effect January 1, 1898, except where "by its terms" some act was to be done or forbidden prior to that time, as to which the charter should take effect immediately. *Held*, that such provision applied only to acts expressly named, and not to section 7, and hence a tax on real estate levied by Queens county subsequent to the time the charter was passed, and before it took effect, was not forbidden, and was a part of the debt to be apportioned.

2. SAME—VALUATION.

Under Greater New York Charter (Laws 1897, c. 378), annexing a part of Queens county, and section 1588, providing that the supreme court may fix the apportionment of the debt of said county between it and New York City, and that such apportionment shall be determined by the relative assessed valuation of real property included in or remaining without the city, the court was bound by the rule of apportionment so provided, and could not adopt another, as being more equitable.

3. SAME—STATUTES—INTENTION.

Under Greater New York Charter (Laws 1897, c. 378), annexing a part of Queens county, and section 1588, providing that the apportionment of the debt of said county between it and New York City should be according to the assessed valuation of real property, it was proper to fix the proportion according to the assessed valuation as equalized and corrected by the board of supervisors, since the object was that the city should assume that portion of the debt which the annexed portion of Queens county would have been compelled to pay, and it could not be attained in any other manner.

Appeal from special term, Albany county.

Action by the county of Queens against the city of New York and the county of Nassau. From a judgment in favor of plaintiff, the city appeals. Affirmed.

This action was commenced against the city of New York in August, 1898, under the provisions of section 1588 of the Greater New York charter (chapter 378 of the Laws of 1897, passed May 4, 1897), to determine the proportion of the debt of the county of Queens which should be assumed by the city of New York. By chapter 588 of the Laws of 1898, taking effect January 1, 1899, the territory of the county of Queens, which had not been consolidated into the city of New York, was erected into the county of Nassau, and by section 13 of that act the county of Nassau took the place of the county of Queens in regard to the debt in controversy. In February, 1899, the county of Nassau was brought in as a party defendant. Section 1588, above referred to, is as follows: "Sec. 1588. The proportion of the debt of the county of Queens which

shall be assumed by the city of New York, as constituted by this act, shall be determined in the manner following: The mayor and the municipal assembly as representing the city of New York, and the board of supervisors of the county of Queens, are hereby authorized and empowered to agree, if they can, as to the amount of the debt of the county of Queens, which should equitably and properly be assumed by the city of New York. If the mayor and the municipal assembly of the city of New York and the board of supervisors of said county of Queens be unable to agree within six months after this act takes effect as to the proportion of said debt of the county of Queens to be assumed by the city of New York the supreme court of the Third judicial district shall have power to determine the proportion of said debt of the county of Queens, to be assumed by said city, and to enforce such award, decision and determination as shall be made in the premises, in a suit in equity to be brought by, and in the name of, either of said parties not less than six months nor more than one year after the taking effect of this act. Nothing herein contained shall impair the obligation of any contract; and the property and inhabitants of such parts of the county of Queens, as are by this act consolidated with the corporation heretofore known as the mayor, aldermen and commonalty of the city of New York, shall continue liable to the existing creditors of the said county of Queens, in like manner as if this act had not been passed. But from and after the taking effect of this act, the board of supervisors of said county of Queens shall have no power to issue any bond, obligation or other evidence of indebtedness which shall bind or render liable the property or the inhabitants of any part of said county included within the city of New York as hereby constituted. The apportionment of the debt of the county of Queens shall be determined according to the relative assessed valuation of the real property included in, or remaining without, the city." The trial court found, as matter of fact, that the bonded indebtedness of the county of Queens on the 1st January, 1898, after deducting certain payments made subsequent thereto, was $4,808,000; that the assessed valuation of the real estate of Queens county within the city of New York, after the same had been equalized by the board of supervisors of Queens county in 1897, and corrected by orders of the supreme court in certiorari proceedings, was $81,539,813.50; that the valuation of the real estate in the said territory, as assessed in 1897, but not equalized by the board of supervisors, and after reductions made therein by order of the supreme court in certiorari proceedings, was $79,107,-069.50; that the assessed valuation of the real estate within the said county outside of the city of New York, after equalization and correction as aforesaid, was $21,026,347; that the valuation of the real estate in the said territory, as assessed in 1897, but not equalized by the board of supervisors, and after deductions made therein by order of the supreme court in certiorari proceedings, was $23,459,091; that, upon the basis of the equalized and corrected assessed valuation, the part of the debt of Queens county to be assumed by the city of New York, as provided by chapter 378 of the Laws of 1897, is $3,-822,346.68, and the part to be assumed by the county of Nassau pursuant to the provisions of chapter 588 of the Laws of 1898 is $985,653.32. As conclusions of law, the court found that the apportionment of the debt of Queens county should be made upon the basis of relative assessed valuation of real estate within such county lying within and without the city of New York; that the assessed valuation to be taken as the basis of such apportionment is the assessed valuation for the year 1897, as equalized by the board of supervisors of Queens county, and corrected by orders of the court; that, of the said bonded debt, the city of New York shall assume the sum of $3,822,346.68, and the county of Nassau the sum of $985,653.32. Judgment was accordingly ordered. The defendant the city of New York duly excepted to the conclusions of law and direction of judgment. It appears in the case that of the indebtedness in existence on the 1st January, 1898, which was found to be $4,808,000, the sum of $2,974,000 was created by the action of the board of supervisors of Queens county subsequent to May 4, 1897, for the purpose of constructing county roads, county buildings, and for other county purposes.

Argued before PARKER, P. J., and HERRICK, MERWIN, SMITH, and KELLOGG, JJ.

John Whalen (William J. Carr, of counsel), for appellant.

Townsend Scudder (Isaac P. Coale, of counsel), for respondent Queens county.

Edward E. Sprague and Fred. Ingraham, for respondent Nassau county.

MERWIN, J.   The circumstance that, in the formation of the city of New York by chapter 378 of the Laws of 1897, only a portion of the territory of the county of Queens was taken into the new city, made it necessary to provide for an apportionment of the debt of the county, which in its origin was a charge upon the entire territory.   Section 1588 of the act provides a method for accomplishing this apportionment.   The use of the remedy there authorized has resulted in the judgment appealed from.

Upon the part of the appellant it is claimed (1) that after the passage of the Greater New York charter, on May 4, 1897, the county of Queens had no power to issue any bond or other obligation or to contract any indebtedness that would bind that portion of its territory to be consolidated into the city of New York by the provisions of the act, and that therefore the amount incurred after May 4, 1897, and prior to January 1, 1898, should have been excluded from the amount to be apportioned; (2) that the court erred in holding that the apportionment should be made upon the basis of the relative assessed valuation of the real estate within the county of Queens lying within and without the city of New York; (3) that the court erred in holding that the assessed valuation to be taken as the basis of the apportionment is the assessed valuation as equalized by the board of supervisors.

The solution of the first proposition depends mainly upon the effect to be given to section 7 of the charter, when read in connection with section 1611.   Section 7 reads as follows:

"Sec. 7. No municipal or public corporation, part of whose territory is annexed to the city of New York, shall hereafter create any debt which shall bind property within the city of New York, nor shall such municipal or public corporation levy any tax or assessment upon property within the city of New York, as herein constituted."

By section 1611 it is provided as follows:

"This act shall take effect on the first day of January, eighteen hundred and ninety eight: provided, however, that where by the terms of this act an election is provided or required to be held or other act done or forbidden prior to January first, eighteen hundred and ninety eight, then as to such election and such acts, this act shall take effect from and after its passage, and shall be in force immediately, anything in this chapter or act to the contrary notwithstanding."

The argument seems to be that section 7 is to be construed as forbidding acts prior to January 1, 1898, and therefore, under section 1611, took effect upon the passage of the act.   The forbidden acts referred to by section 1611 are only those which "by the terms of this act" are forbidden prior to January 1, 1898.   An illustration of such forbidding appears in section 86, in regard to patents of land under water "after the approval of this act."   The acts stated in

section 7 are not, in terms, forbidden prior to January 1, 1898. Nor is it apparent that there was any such intention. No such restraint was placed upon the other counties. By section 8 the power of the counties of New York, Kings, and Richmond only ceased upon the consummation and taking effect of the consolidation. That was January 1, 1898. If section 7 took effect at the passage of the act, then the county of Queens was by it forbidden from levying in the fall of 1897 any tax or assessment upon property in that part of its territory which upon the 1st January, 1898, would become part of the city·of New York. It is very clear that no such result was contemplated. There was no design to relieve from taxation in the fall of 1897 any part of Queens county. The debt which was to be the subject of apportionment under section 1588 is referred to in section 4. It is there provided as follows:

"All bonds, stocks, contracts and obligations of the said municipal and public corporations, including the county of Kings and the county of Richmond. and such proportion of the debt of the county of Queens and of the town of Hempstead as shall be ascertained as hereinafter prescribed, which now exist as legal obligations, shall be deemed like obligations of the city of New York, and all such obligations as are authorized or required to be hereafter issued or entered into, shall be issued or entered into by and in the name of the corporation of the city of New York."   ·

Under this provision, the debt to be apportioned was the debt existing at the time the act took effect. The obligation upon the city of New York was imposed the moment it came into existence, which was January 1, 1898. When it absorbed the territory, it at the same time took the burden of the proportionate part of the debt then existing. From that time the city of New York took control, and necessarily up to that time the obligation and the power remained with the prior municipality. Naturally the power, such as was necessary to the proper administration of affairs, would not be restrained until the successor came into existence. The increase after the passage of the act, and before January 1, 1898, was large; but we have no right here to assume that the manner or extent of the exercise of the power was illegal, provided that the power itself remained. In the brief of the appellant it is stated that the appellant does not here question the validity of the bonds themselves, or that they are charges upon the entire territory of the county of Queens, but simply whether the county of Queens is entitled to have them charged upon the entire territory of the city of New York. Still, if the bonds are valid, and charges upon the entire territory of Queens county, as it was before the consolidation, then, under section 4, above referred to, there would not seem to be any doubt of the right of apportionment. Section 1 of the charter, in describing municipalities or parts thereof to be consolidated, excludes counties. It may, therefore, be assumed that for some purposes the existence of Queens county as such in its original extent remained. Very likely section 7 was enacted so that it would be made certain that, whatever rights might remain to Queens county under its prior form of existence, it would not have the right, after the consolidation became effective, to create any debt or levy any tax that would reach property within the new city. No error

is, I think, apparent in the action of the trial court in adopting the amount to be apportioned.°

It is claimed by the appellant that, although a definite rule for the apportionment is expressly laid down in the last clause of section 1588, still the trial court had the power of adopting a more equitable rule, and should have done so. By that section the parties or their representatives were authorized and empowered to agree, if they could, upon the amount of the debt which should equitably and properly be assumed by the city of New York. If they were unable to agree, then power was given to the court named to determine the proportion and enforce the determination, in an action to be brought by either party. The rule for the apportionment was laid down. This did not nullify the power given to the court, but limited it or regulated its exercise. Both provisions may have effect. It is not a case of inconsistent provisions. I see no room for a construction that would authorize the trial court to disregard the rule laid down. It was the duty of the court to apply and enforce it. It is therefore not necessary to inquire whether a more equitable rule might have been adopted.

But it is said that the valuations actually assessed are to be taken, and not the valuations equalized by the board of supervisors. It was undoubtedly the object of the legislature, in directing the apportionment to be determined according to the relative assessed valuation, to provide that the city of New York, standing in the place of that part of Queens county which became one of its constituent elements, should take the same burden of debt that such portion of Queens county would have been called on to pay had there been no consolidation. That object could only be accomplished by taking the equalized valuation. Equalization is made by the board of supervisors, in performance of a statutory duty, for the purpose of ascertaining the just relative valuation. Section 50, Tax Law (chapter 908, Laws 1896). The expression, "relative assessed vaulation," as used in section 1588, may be well held to mean the assessed valuation as finally completed for the purposes of taxation. No good ground is apparent for the reversal of the judgment, and it should be affirmed.

Judgment affirmed, with costs. All concur.